UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EARL ODOMS, JR. ,

Plaintiff,

v.

M. BURGESS, et al.,

Defendants.

Case No. 1:26-cv-229

Honorable Phillip J. Green

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28

U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff: Warden M. Burgess, Deputy Warden Unknown Clouse, Assistant Deputy Warden Unknown Erway, Assistant Deputy Warden Unknown Krause, Inspector Unknown Pelky, Sergeant and PREA Coordinator Unknown Porter, Resident Unit Manager Unknown McColl, Resident Unit Manager Unknown Turner, Prison Counselor Unknown Larson, Prison Counselor Unknown McShane, and Transport Coordinator Unknown Party.

Plaintiff alleges that, on August 14, 2024, Plaintiff made a Prison Rape Elimination Act (PREA) complaint against Defendant Burgess. (Compl., ECF No. 1, PageID.7.) Immediately thereafter, a non-party officer made "threatening remarks toward[] Plaintiff." (*Id.*) Plaintiff informed the Security Classification Committee (SCC) of those threatening remarks. (*Id.*)

On August 21, 2024, the SCC, including Defendants Erway, Turner, and Larson, reviewed Plaintiff's complaint of threatening remarks. (*Id.*) Defendant Erway then informed Plaintiff, "SCC believes your security needs can and will be met

in our PC unit." (*Id.*) The following day, non-party officers began harassing Plaintiff and calling him a "snitch" in front of other prisoners. (*Id.*)

On October 10, 2024, Plaintiff informed Defendant McShane of the harassment that he had been receiving from non-party officers. (*Id.*) Defendant McShane told Plaintiff that he should not have written a PREA complaint against Defendant Burgess. (*Id.*) Defendant McShane also stated, "SCC sent you back over here with strick [sic] instructions to make your life a living hell. And tonight you will know what a PREA feels like." (*Id.*) Later than evening, non-party Prisoner Brjra was assigned to Plaintiff's cell as Plaintiff's cellmate. (*Id.*)

On October 14, 2024, Plaintiff was placed in segregation after Prisoner Brjra accused Plaintiff of sexual assault. (*Id.*) When Plaintiff asked Defendant Porter why Defendant Porter had not initiated an investigation into Prisoner Brjra's complaint, Defendant Porter responded, "I ain't about to investigate a PREA that a n*gger wrote on my Warden." (*Id.*, PageID.8) (asterisks added).

On October 17, 2024, non-party Inspector Thomas filed a criminal complaint against Plaintiff with the Michigan State Police without conducting any independent investigation. (*Id.*)

On October 22, 2024, Defendant Turner "submitted a notice of intent (NOI) to classify Plaintiff to administrative segregation," and "the NOI was upheld" on October 28, 2024. (*Id.*)

On October 29, 2024, Plaintiff submitted a kite to Defendant Larson, complaining of his exposure to second-hand fentanyl smoke. (*Id.*) Defendant Larson did not respond. (*Id.*)

On October 30, 2024, Defendants Erway, Turner, and Larson placed Plaintiff on administrative segregation despite violating an MDOC policy concerning notice. (*Id.*) When Plaintiff brought the policy violation of the attention of Defendants Erway, Turner, and Larson, Defendant Erway stated, "You wrote a PREA on our Warden[.] [W]hat makes you think we will let a n*gger get away with that." (*Id.*) (asterisks added). Plaintiff also complained to Defendants Turner, Erway, and Larson about his exposure to second-hand fentanyl smoke. (*Id.*) Defendant Erway responded by calling Plaintiff a "snitch" loud enough for other prisoners to hear. (*Id.*)

On October 31, 2024, Defendant Burgess approved Plaintiff's placement in administrative segregation. (*Id.*)

On November 27, 2024, Plaintiff asked Defendants Turner, Erway, and Larson why he was still being held in administrative segregation even though the SCC failed to complete a required form. (*Id.*) Defendant Turner stated, "You didn't ask Burgess for approval before you submitted that PREA on him so why should we get permission to place you in administrative segregation." (*Id.*) That same day, non-party Prisoner Palmore told Plaintiff that Defendants Turner and Larson had instructed him to harass Plaintiff. (*Id.*) Defendants Turner, Erway, and Larson also submitted another recommendation that Plaintiff be held in administrative segregation, which was approved by Defendant Burgess on December 13, 2024. (*Id.*, PageID.9.)

On December 26, 2024, Plaintiff told Defendant Larson that someone had thrown urine on his bed. (*Id.*) Defendant Larson asked Plaintiff why Plaintiff was reporting that to him. (*Id.*) Plaintiff also informed Defendants Clouse, Turner, and Larson of his continued exposure to second-hand fentanyl smoke. (*Id.*) Defendant Clouse responded, "Report your problems to the PREA hotline maybe they'll find time to care." (*Id.*)

On December 26, 2024, January 23, 2025, and February 19, 2025, Defendants Turner, Larson, Clouse, and Burgess decided that Plaintiff would remain in administrative segregation. (*Id.*) During Plaintiff's December 2024 SCC review, Defendant Clouse told Plaintiff that he was being kept in administrative segregation because of the PREA complaint that he filed against Defendant Burgess. (*Id.*)

On January 27, 2025, a health care provider determined that Plaintiff had fluid in his lungs and breathing difficulties due to smoking. (*Id.*) Plaintiff asked Defendants Turner, Larson, and Erway to move him to a smoke-free environment, but he was not moved. (*Id.*)

On February 26, 2025, Plaintiff gave Defendant Larson a kite with information concerning the ECF staff member who was bringing drugs into the facility. (*Id.*) Plaintiff told Defendant Turner that he would give the information to Burgess if "ECF administration" agreed to release Plaintiff from administrative segregation. (*Id.*) Defendants Turner and Clouse spoke with Plaintiff but refused to release Plaintiff from administrative segregation. (*Id.*) On February 28, 2025, March 3, 2025, and March 5, 2025, other prisoners overdosed on fentanyl. (*Id.*, PageID.10.) When

Plaintiff asked Defendant Pelky to relocate him away from the fentanyl smoke, Defendant Pelky responded, "You filed a PREA complaint on Burgess. You have nothing coming from me but a bag of sh*t." (*Id.*) (asterisks added).

On March 6, 2025, and March 12, 2025, Defendants Erway, Turner and Larson moved two other prisoners after those prisoners complained of fentanyl smoke. (*Id.*)

On March 14, 2025, Defendants Erway, Turner, and Larson requested Plaintiff's continued confinement to administrative segregation. (*Id.*) Non-Party Chapman approved the request on March 19, 2025. (*Id.*) That same day, Plaintiff received three misconduct charges for assaulting staff. (*Id.*) Plaintiff does not recall the incident and believes that he may have been experiencing effects from second-hand fentanyl smoke. (*Id.*) Plaintiff was placed in a restraint chair for eleven hours and then on suicide watch for 48 hours. (*Id.*, PageID.11.) Defendants Turner, Erway, and Krause filed a sixth recommendation that Plaintiff stay in administrative segregation, which was approved by Defendant Burgess on March 25, 2025. (*Id.*, PageID.10.)

On March 21, 2025, Plaintiff was released from suicide watch and placed back in the A-wing, where he continued to smell fentanyl smoke. (*Id.*, PageID.11.) Plaintiff asked to be placed back on suicide watch. (*Id.*) Also on March 21, 2025, non-party Prisoner Roughton told Plaintiff that he had filed a false PREA complaint against Plaintiff at the request of Defendants Erway, Turner, and Larson. (*Id.*) Non-party Prisoner Green stated that he had harassed Plaintiff at the request of Defendant Erway, and non-party Prisoner Tems admitted that he coached Prisoner

Brjra on filing a false PREA complaint against Plaintiff upon the request of Defendant McShane. (*Id.*)

On March 27, 2025, Plaintiff submitted a healthcare kite and complained to non-party Psychologist Dunlap about vomiting and headaches from involuntary intoxication. (*Id.*) Psychologist Dunlap told Plaintiff that she is aware of the fentanyl smoke and would speak to someone on Plaintiff's behalf. (*Id.*) The following day, Plaintiff was moved to a location without fentanyl smoke. (*Id.*)

On April 9, 2025, Defendant Burgess met with Plaintiff and told Plaintiff that the Michigan State Police had cleared Plaintiff of Prisoner Brjra's rape allegations. (*Id.*) Defendant Burgess also told Plaintiff that Plaintiff would be moved to a different facility and that staff would "figure 'it out'" with respect to Plaintiff's concerns related to his diet and protective custody. (*Id.*) Plaintiff's transfer was approved by Defendants Turner, Larson, Clouse, and Erway, and Defendants Turner, McColl, Larson, Clouse, and Burgess determined that Plaintiff would remain in administrative segregation until that transfer. (*Id.*, PageID.12.)

On April 29, 2025, Plaintiff was transferred from ECF to AMF, even though AMF is not a "protective custody facilit[y]" and "despite [P]laintiff's PC status." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants retaliated against Plaintiff, in violation of Plaintiff's First Amendment rights, and failed to protect Plaintiff, in violation of Plaintiff's Eighth Amendment rights. (*Id.*, PageID.13–14.) Plaintiff seeks declaratory, injunctive and monetary relief. (*Id.*, PageID.15.)

## II. Res Judicata

Plaintiff previously filed a civil rights complaint against Defendants Burgess, Clouse, Erway, Krause, McColl, Larson, Thomas, Turner, and Pelky that was based upon the same set of operative facts concerning the events from August 21, 2024, until December 25, 2025. Op., *Odoms v. Burgess* (*Odoms I*), No. 1:25-cv-64 (W.D. Mich. Mar 10, 2025) (ECF No. 6). In *Odoms I*, the Court dismissed Plaintiff's federal claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and dismissed Plaintiff's state law claims against Defendants Erway, Turner, Burgess, and Larson without prejudice. *Id.*

Under the doctrine of *res judicata*, or claim preclusion, a claim is barred by prior litigation if the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (citations omitted). The *res judicata* rule "precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citations omitted). An action that is barred by *res judicata* is legally frivolous. *See, e.g., Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001); *Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001).

Here, all four elements are present with respect to Plaintiff's federal claims arising prior to December 25, 2025. *See Hughes v. U.S. Dep't of Hous. & Urb. Dev.*,

238 F.3d 421 (6th Cir. 2000) (citation omitted) ("[D]ismissal for failure to state a claim operates as a decision on the merits for res judicata purposes."). Although the instant lawsuit includes additional Defendants (McShane, and Transport Coordinator Unknown Party), *res judicata* bars Plaintiff's claims against them because he had a full and fair opportunity to raise his claims against those Defendants in his prior lawsuit. *See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (explaining that, "[w]here a litigant brings repeated actions based upon the same operative facts," res judicata may still apply "despite a change in legal theory or the 'cast of characters-defendants'") (quoting *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992)).

Additionally, while Plaintiff's complaint raises some new claims and legal theories that differ from his previous lawsuit, *res judicata* bars Plaintiff from litigating a new legal theory based on the same operative facts. *See Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 482 (6th Cir. 2014) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006)) ("[P]laintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies.").

Finally, Plaintiff's claims in the previous lawsuit and those in the instant lawsuit all derive from the same operative facts concerning various PREA complaints, conditions of confinement, and Plaintiff's placement in administrative segregation while at ECF. Considering that all four elements are present, Plaintiff's claims

arising on or before December 25, 2025, are subject to dismissal on *res judicata* grounds and are frivolous.

## III. Failure to State a Claim

As it pertains to Plaintiff's claims arising after December 25, 2025, a complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued

under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages and injunctive relief. (Compl., ECF No. 1, PageID.4.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected

to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). In the present action, Plaintiff does not allege that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm.

Therefore, for these reasons, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

**B. First Amendment Retaliation Claims**

Plaintiff brings First Amendment retaliation claims against Defendants. (Compl., ECF No. 1, PageID.13.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendants retaliated against him because he filed a PREA complaint against Defendant Burgess. (Compl., ECF No. 1, PageID.13.) He claims that Defendants Erway, Turner, Larson, McColl, Clause, Krause, and Burgess confined Plaintiff to administrative segregation, Defendants Erway, Turner, Larson, Krause, Clouse, Pelky, and McColl failed to remove Plaintiff from exposure to second-hand fentanyl smoke, and Defendants Erway, Larson, McColl, Krause, and Burgess transferred Plaintiff to AMF, all as acts of unlawful retaliation. (*Id.*) Plaintiff also claims that, in March 2025, he learned that Defendant McShane had encouraged the filing of Prisoner Brjra's false PREA complaint. (*Id.*, PageID.11.)[2] At this early stage of the litigation, the Court assumes without deciding that Plaintiff's PREA complaint against Defendant Burgess was First Amendment protected conduct. Therefore, taking Plaintiff's factual allegations as true, the Court will allow Plaintiff to proceed with his First Amendment retaliation claims against Defendants Erway, Turner, Larson, Clouse, McShane, and Pelky.

However, Plaintiff alleges only that Defendants McColl and Krause were included in the committee responsible for recommending that Plaintiff remain in administrative segregation (*id.*, PageID.10), and that Defendant Burgess approved the committee's recommendations (*id.*, PageID.8–12) and decided that Plaintiff would be transferred to AMF (*id.*, PageID.12). Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation against Defendants McColl, Krause,

[2] Plaintiff also alleges that Defendant Porter refused to conduct an investigation into Prisoner Brjra's false PREA complaint in October 2024 (Compl., ECF No. 1, PageID.7.) However, any such claim is barred by the doctrine of *res judicata*.

and Burgess based upon their roles in these decisions. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendants McColl, Krause, and Burgess were in fact motivated to act by Plaintiff's First Amendment protected conduct. Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation against Defendants McColl, Krause, and Burgess.

### C. Eighth Amendment Failure to Protect Claims

Plaintiff alleges that Defendants Erway, Turner, Larson, Krause, Clouse, McColl, Burgess, and Unknown Party violated his Eighth Amendment rights by failing to protect him. (Compl., ECF No. 1, PageID.13.) Inmates have a constitutionally protected right to personal safety grounded in the Eighth

Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).

For a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, Plaintiff alleges Defendants Erway, Turner, Larson, Krause, Clouse, McColl, Burgess, and Unknown Party failed to protect Plaintiff from assaults by other prisoners when they transferred him out of protective custody to a maximum security facility's general population. (Compl., ECF No. 1, PageID.13.) However, Plaintiff has not alleged sufficient facts to plausibly suggest that these Defendants were aware that Plaintiff faced a substantial risk of serious harm at AMF that could not be appropriately handled by AMF staff. "[P]risons are inherently dangerous places." *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). Without facts to demonstrate that Defendants Erway, Turner, Larson, Krause, Clouse, McColl, Burgess, and

Unknown Party knew that Plaintiff would face a particular substantial risk of harm at AMF *and* were deliberately indifferent to that risk, Plaintiff necessarily fails to state an Eighth Amendment claim for failure to protect.[3]

Plaintiff also alleges that Defendants Larson, Turner, Erway, Clouse, failed to protect Plaintiff from the ill effects of second-hand fentanyl smoke despite Plaintiff's complaints and inmate overdoses within the unit. (Compl., ECF No. 1, PageID.8–11.) Plaintiff claims that, on one occasion, Defendant Erway responded to his complaint by calling him a "snitch" loud enough for other prisoners to hear. (*Id.*, PageID.8.) Though Plaintiff has by no means proven his allegations, the Court will allow Plaintiff to proceed with his Eighth Amendment claims based upon second-hand fentanyl smoke.

**D. Claims of Supervisory Liability**

Finally, Plaintiff alleges that "staff" and other non-parties engaged in threatening and harassing behavior toward Plaintiff. To the extent that Plaintiff seeks to hold any named Defendant liable for those actions, he cannot.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978);

[3] Plaintiff also alleges that Defendants were "negligent" in failing to protect him from a risk of assault by other prisoners. (Compl., ECF No. 1, PageID.13.) As discussed above, negligent actions fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Therefore, any claims of negligence will be dismissed.

*Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to provide the court with any well-pleaded factual allegations that would suggest any named Defendant authorized, approved, or knowingly acquiesced in the conduct of their subordinates. Accordingly, the Court will dismiss Plaintiff's complaint to the extent that any claims are based solely upon supervisory liability.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Burgess, Porter, McColl, Krause, and Unknown Party will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Clouse, Erway, Pelky, Turner, Larson, and McShane: claims arising on or before December 25, 2025, official capacity claims, Eighth Amendment failure-to-protect claims based upon Plaintiff's transfer to AMF, Eighth Amendment claims premised upon negligence, and claims of supervisory liability. Plaintiff's First Amendment retaliation claims against Defendants Erway, Turner, Larson, Clouse, McShane, and Pelky, and Eighth Amendment failure-to-protect claims against Defendants Larson, Turner, Erway, and Clouse concerning Plaintiff's exposure to second-hand fentanyl smoke remain in the case.

An order consistent with this opinion will be entered.

Dated: August 27, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge